**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
IN THE STRUGGLE PRODUCTIONS LLC      :

                                      :       **COMPLAINT**

            Plaintiff,         :

                                        :       **Index No. 1:24-cv-2782**

     -against-           :

                                        :

JULIUS CEAZAR HERRARA             :       <u>**JURY TRIAL REQUESTED**</u>
P/K/A "SUIGENERIS";                :
DEVILGEAR RECORDS LLC; AND,    :
EMPIRE DISTRIBUTION, INC.         :

                                        :

            Defendants.       :
-------------------------------------------------------------------X

       Plaintiff In The Struggle Productions Limited Liability Company (the "Plaintiff" or

"ITS") by and through its undersigned attorneys, Justin Jacobson Law, P.C., as for its Complaint

against Defendants JULIUS CEAZAR HERRARA professionally known as "SUIGENERIS"

("SUIGENERIS"), DEVILGEAR RECORDS LLC ("DEVILGEAR"), and EMPIRE

DISTRIBUTION, INC. ("EMPIRE") (hereinafter collectively referred to as the "Defendants"),

respectfully alleges upon knowledge as to its own acts and upon information on the acts of

others, as follows:

## I.  <u>NATURE OF ACTION</u>

1.  Due to the importance of defending and incentivizing the creation of original artistic

    works, the protection and enforcement of an author's rights in their copyrighted work is

    engrained within the U.S. Constitution and further strengthened under the U.S. Copyright

    Act. As a result of these established principles, when a party expends their time, creative

    talents, and resources to develop an original work, such as a musical composition, they

    expect to be compensated for the commercial usage of their work. This fact is especially

    true when a creator enters into a valid and binding agreement establishing and confirming

a financial arrangement for the use of an original piece. However, as is too common in today's entertainment, and particularly the music business, many composers and producers of original musical compositions and recordings are denied this constitutionality protected and established right due to the individual musicians and/or their respective licensees including their recording labels, music publishers, and/or music distribution companies failing to adhere to those written duties such as making the contractually obligated payments for the original creations that they exploit and monetize pursuant to the terms of a validly executed agreement.

2. Even worse is the current situation at bar, where even after receiving several written notices and engaging in extensive back and forth emails and telephone conversations for prolonged periods of time, no compensation or payment nor the contractually required accounting statements have ever been provided to or even offered in good faith to the owner of the musical works. In fact, for nearly half a decade, the artist and his commercial licensees continue to commercially exploit and monetize another's protected work amassing tens of millions of compensated transactions including from both physical items as well as from digital streams, downloads, plays, views, and other monetized transactions while providing the rightful owner with nothing (and even going as far as publicly defaming the creator of the works that they wrongfully commercialize).

3. Accordingly, the business model of utilizing the valuable intellectual property owned by the Plaintiff without paying for it has been a highly lucrative practice for the Defendants who continue with its willful unauthorized usage and monetization of the Plaintiff's protected works despite receiving several notices of breaches and in spite of the various valid "takedown" notices filed by the Plaintiff. In fact, to continue to perpetuate this

illegal action, the Defendants went as far as filing counter-notices to fraudulently dispute the validly issued "takedown" notices provided by the Plaintiff to enable the Defendants to continue its illegal monetization scheme further violating the creator's rights in the protected works.

4. Despite the Defendants' continued unauthorized exploitation of the Plaintiff's works without compensation or the provision of the contractually obligated royalty accounting statement for nearly five years, the Plaintiff reached out to the Defendants several times to attempt to negotiate and reach an agreement to receive the owed compensation and accounting statements.

5. The law does not permit the kind of continuous and uncompensated infringement that the Defendants have committed. This action seeks to hold them responsible for the statutory and actual damages that they owe for the unlawful usage and monetization of the Plaintiff's uniquely valuable works as well as the Defendants other enumerated violations.


## II. **JURISDICTION AND VENUE**

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq* and the Declaratory Judgment Act 28 U.S.C. §§ 2201.

7. This Court has personal jurisdiction over the Defendants under 17 U.S.C. § 512(g)(3)(D) due to the Defendants submitting a counter-notification in response to the Plaintiff's "takedown" notice under the DMCA.

8. This Court also has personal jurisdiction over the Defendants because they have

purposefully availed themselves of the privileges of conducting business in New York and the Defendants have directed their activities and marketing of the infringing compositions and recordings to New York residents, i.e., New York residents are able to purchase, download, and stream the infringing compositions and recordings.

9. The Defendants have engaged in systematic and continuous business activities relating to the infringing compositions and recordings. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction including the marketing, sales, and licensing of the infringing compositions and recordings within the District. Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendant EMPIRE resides in this District. Venue is also proper because a substantial part of the events giving rise to the claims occurred in this District, 28 U.S.C. § 1391(b)(2).

10. The Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

11. Defendant SUIGENERIS has performed, and he and the other Defendants have authorized, organized, and promoted performances of the infringing compositions and recordings numerous times in New York, as well as throughout the United States.

12. The Defendants have generated touring and recording revenues from the unauthorized and unlawful exploitation of the infringing compositions and recordings, including receiving substantial revenue from such exploitation in New York, as well as throughout the United States. The Defendants have advertised the infringing compositions and recordings to New York residents, as well as throughout the United States.

13. The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing compositions and recordings in New York, and

throughout the United States.

14. Venue is proper in this District pursuant to 28 U.S.C §1391(b)(2), §1391(c), and §1400(a), respectively, because Defendant EMPIRE maintains an office and employs personnel in New York, so they are subject to personal jurisdiction in this District, and they have committed unlawful acts of infringement in this District. Further, a substantial part of the events that give rise to this claim, as described above, occurred in this District.

## III.   THE PARTIES

15. Plaintiff In The Struggle Productions Limited Liability Company is a New Jersey limited liability company ("ITS") with a principal place of business at 123 Town Square Place, #107, Jersey City, NJ 07310. ITS' registered agent is Jose Trespalacios at the address 123 Town Square Place, #107, Jersey City, NJ 07310. ITS regularly conducts business in New York. ITS' operates in New York including several of the recording studios that ITS works in. ITS is a music and entertainment production, publishing, and recording company that markets, promotes, and distributes original musical compositions and recordings as well as licenses original musical works to third parties such as record labels, musicians, and motion picture and television studios, on behalf of its rosters of musical acts and producers including but not limited to Mr. Ruben D. Sosa, Jr. professionally known as "Citoonthebeat" (hereinafter referred to as "CITO").

16. Defendant JULIUS CEAZAR HERRARA professionally known as "Suigeneris" ("SUIGENERIS") is a resident of the State of California, and in any event, SUIGENERIS regularly conducts business in New York. SUIGENERIS is a musical artist who engages other musical producers and composers to create original musical

compositions for him to perform such as CITO. He has generated substantial revenue from the exploitation of the infringing compositions and recordings in New York, and throughout the United States. Upon further information and belief, SUIGENERIS entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing compositions and recordings in New York, and throughout the United States.

17. Defendant DEVILGEAR RECORDS LLC ("DEVILGEAR") is a California limited liability company with a principal place of business at 1512 Mount Frazier Drive, San Jose, CA 95127. DEVILGEAR's registered agent is Eduardo Herrera at 1512 Mount Frazier Drive, San Jose, CA 95127. DEVILGEAR has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise SUIGENERIS' songs including the infringing compositions and recordings in New York, and throughout the United States. DEVILGEAR has generated substantial revenue from the exploitation of the infringing compositions and recordings in New York, and throughout the United States. Upon further information and belief, DEVILGEAR entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing compositions and recordings in New York, and throughout the United States. DEVILGEAR arranged for the distribution and commercial licensing of the infringing compositions and recordings and DEVILGEAR is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing compositions and recordings in New York, and throughout the United States. Upon information and belief, DEVILGEAR conducts systematic and continuous business in this District and DEVILGEAR has generated substantial revenue from the exploitation of

the infringing compositions and recordings in this District. DEVILGEAR has previously and continues to offer for sale and has caused others to offer for sale the infringing compositions and recordings in New York, and throughout the United States. DEVILGEAR has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing compositions and recordings in New York, and throughout the United States. Interestingly, as of the date of this filing, DEVILGEAR's limited liability company is currently suspended, and DEVILGEAR has been subject to this delinquent status since as early as February 2, 2021 (Exhibit "A").

18. Defendant EMPIRE Distribution, Inc. ("EMPIRE") is a California corporation with a principal place of business at 235 Pine Street, San Francisco, CA 94104. EMPIRE's registered agent is Michael Gallegus at 235 Pine Street, San Francisco, CA 94104. EMPIRE has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise SUIGENERIS' songs including the infringing compositions and recordings in New York and EMPIRE operates an office and employs personnel in New York. Upon further information and belief, EMPIRE entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing compositions and recordings in New York, and throughout the United States. EMPIRE arranged for the distribution of the infringing compositions and recordings and EMPIRE is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing compositions and recordings in New York, and throughout the United States. Upon information and belief, EMPIRE conducts systematic and continuous business in this District and EMPIRE has generated substantial revenue from the exploitation of the infringing compositions and recordings in this District.

EMPIRE has offered and continues to offer for sale and caused others to offer for sale, the infringing compositions and recordings in New York, and throughout the United States. EMPIRE has sold and benefitted from and continues to sell and benefit from the sale and commercial exploitation of the infringing compositions and recordings in New York, and throughout the United States.

## IV. FACTUAL ALLEGATIONS

19. The Plaintiff is the sole owner and the exclusive rights holder to the musical compositions and recordings composed and created by Mr. Ruben D. Sosa, Jr. professionally known as "Citoonthebeat" ("CITO"). CITO is a popular hip-hop, rap, and pop music producer, songwriter, and creator of original musical compositions and recordings including crafting original musical instrumentals and "beats" for the sale, licensing, and usage by other musical acts such as Defendant SUIGENERIS (Exhibit "B").

20. As contracted and on behalf of CITO, the Plaintiff issues licenses, sells, and otherwise exclusively exploits the original compositions and recordings that CITO creates, including licensing, selling, and/or otherwise monetizing those creative works with other musical artists who prepare derivative works incorporating the original compositions and recordings such as Defendant SUIGENERIS.

21. CITO's compositions exemplify a prevalent and popular genre of music, which frequently combines elements of hip hop, R&B, and rap, among others. CITO has received critical acclaim for his prior releases with over a billion total digital streams and digital plays of original artistic works featuring his compositions and recordings. CITO

has worked with many popular musical artists in the past decade on behalf of ITS including *Cardi B, Dave East, Troy Ave, Y.G.*, *Ty Dolla Sign*, *Kevin Gates*, *Tory Lanez*, and *Lil Yachty*, among many others. CITO has achieved extensive notoriety for his successfully produced and created musical works and as a result, the usage of his name, image, and likeness as well as his tradename has a substantial commercial value when utilized or referred to in connection with a musical composition or recording. CITO has even had some of his prior produced musical compositions and recordings on behalf of ITS certified Gold by the RIAA for selling over 500,000 copies in the U.S. alone, which has made him one of the top producers in the industry (Exhibit "C").

22. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Feelings*." The musical composition is an original work, copyrightable under the Copyright Act. Thus, the Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition for any other medium, including a sound recording. The musical composition was properly registered with the United States Copyright Office on September 28, 2022, as Registration No. PA-2-377-383. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "D".

23. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Frank Muller*." The musical composition is an original work, copyrightable under the Copyright Act. Thus, the Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition for any other medium, including a sound recording. The musical composition was properly registered with the United States Copyright Office on September 28, 2022, as Registration No. PA-

2-377-423. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "E".

24. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Nintendo*." The musical composition is an original work, copyrightable under the Copyright Act. Thus, Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition for any other medium, including a sound recording. The musical composition was properly registered with the United States Copyright Office on September 28, 2022, as Registration No. PA-2-377-379. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "F".

25. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Brown Justin Bieber*." The musical composition is an original work, copyrightable under the Copyright Act. Thus, Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition for any other medium, including a sound recording. The musical composition was properly registered with the United States Copyright Office on September 28, 2022, as Registration No. PA-2-377-380. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "G".

26. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Faithful*." The musical composition is an original work, copyrightable under the Copyright Act. Thus, Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition for any other medium, including a sound recording. The musical composition was properly registered with the

United States Copyright Office on September 28, 2022, as Registration No. PA-2-377-385. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "H".

27. The Plaintiff is the owner of a federally registered U.S. trademark in "Citoonthebeat" (U.S. Reg. No. 7,187,398) in International Class 041 for "Music production services," "Production of music," and "Entertainment services in the nature of recording, production and post-production services in the field of music" (hereinafter referred to as the "CITO Trademark"). The CITO Trademark was properly registered with the United States Patent and Trademark Office on October 10, 2023, with a date of first use as early as January 1, 2006. The Trademark Registration Certificate reflecting the foregoing registration is attached hereto as Exhibit "I".

28. Upon reasonable information and belief, JULIUS CEAZAR HERRARA, professionally known as SUIGENERIS is an international hip-hop artist based in California.

29. Upon reasonable information and belief, SUIGENERIS has achieved commercial success including but not limited to achieving millions of compensated views and plays on *YouTube* and on *Spotify* as well as millions of monetized streams on *Pandora* and on *Soundcloud* through the commercial usage and exploitation of musical compositions and recordings including those provided by the Plaintiff to the Defendants (Exhibit "J").

30. Upon reasonable information and belief, Defendant SUIGENERIS entered into an "'exclusive recording agreement,' dated as of November 8, 2017" with Defendant EMPIRE (hereinafter referred to as the "Empire Recording Agreement") as it relates to SUIGENERIS' musical works which provided Defendant SUIGENERIS with "fifty percent (50%) of Net Income" earned from "the exploitation of 'Content'" and allotted

the remaining fifty percent of any income earned to Defendant EMPIRE which included proceeds from the original compositions and recordings created and owned by the Plaintiff (Exhibit "K").

31. Upon information and belief, on or about November 11, 2019, the Plaintiff, and the Defendant DEVILGEAR on behalf of the Defendant SUIGENERIS entered into the "Producer Agreement," dated November 11, 2019 (hereinafter referred to as the "Producer Agreement"). The Producer Agreement included information memorializing the Plaintiff's exclusive interest and right to earn compensation from the exploitation of the twenty-five (25) compositions listed in "Schedule 1" of the Producer Agreement, which are all jointly written and composed by CITO and Defendant SUIGENERIS unless otherwise indicated (Exhibit "L").

32. Specifically, the Producer Agreement is applicable to at least twenty-one (21) of the identified compositions and recordings released and commercialized by the Defendants without authorization, compensation, or the provision of proper accounting statements to the Plaintiff as contractually mandated under the Producer Agreement (Exhibit "L").

33. Upon information and belief, the Producer Agreement applies to the following original musical compositions and recordings created by CITO and licensed by the Plaintiff to the Defendants including but not limited to: "*Frank Muller,*" "*Faithful*," "*Feelings*," "*Brown Justin Bieber*," "*Nintendo*," "*Mary Jane*," "*Love and Hate*," "*Slime*," "*Nevaland*," "*Waste Away*," "*On God*," "*Crown*," "*Tip Em*," "*Dancin*," "*Really Do This*," "*Racks Up* (Racks)", "*Break Up*," "*Sunset*," "*Regular (Spanish)*," "*Both Ways*," and "*Sauce*" (hereinafter collectively referred to as the "Infringing Works") (Exhibit "L").

34. Upon information and belief, the Producer Agreement applies to the following original

musical compositions and recordings created by CITO which are currently registered

with the U.S. Copyright Office, and which are licensed by the Plaintiff to the Defendants

including: "*Frank Muller,*" "*Faithful*," "*Feelings,*" "*Brown Justin Bieber,*" and

"*Nintendo*" (hereinafter collectively referred to as the "Registered Infringing Works")

(Exhibit "L").

35. The Producer Agreement contains the credit provision which reads as follows:

    a.  "With respect to the Master(s) [Infringing Works], Company [Defendant DEVILGEAR] shall accord, or shall instruct and use reasonable commercial efforts to cause Distributor [Defendant EMPIRE] to provide, credit to Producer [CITO] as set forth on Schedule 1 in the linear notes of any record containing the Master(s) [Infringing Works], including […] on metadata in connection with electronic transmissions…" such as *Spotify* (Exhibit "L").

36. The Producer Agreement contains the fee and royalty provisions which reads as follows:

    a.  "Company [Defendant DEVILGEAR] shall pay or shall cause Distributor [Defendant EMPIRE] to pay to Lender [Plaintiff] a royalty in the amount of Ten Percent (10%) (the 'Base Rate') of the Artist's [Defendant SUIGENERIS] share of "Net Income" (as defined in the Recording Agreement [The Empire Recording Agreement])" (Exhibit "L").

37. The Producer Agreement contains the additional "Producer Royalty Provisions" listed on

"Schedule 2" in Paragraph 3 which reads as follows:

    a.  "On exploitations of audio-visual recordings embodying a Master [Infringing Work] or Masters [Infringing Works], Producer's [CITO] Royalty will be equal to fifty (50%) of the otherwise applicable royalty" (Exhibit "L").

38. The Producer Agreement also contains the additional "Producer Royalty Provisions"

listed on "Schedule 2" in Paragraph 4 which reads as follows:

    a.  "In the event Company [Defendant DEVILGEAR] or Artist [Defendant SUIGENERIS] receives or is credited with any so-called "Direct Monies" from third-parties other than Distributor [Defendant EMPIRE] (e.g., monies from SoundExchange) solely and directly attributable to the Master(s) [Infringing Works], Company [Defendant DEVILGEAR] will pay, or shall instruct such third party to pay, Lender [Plaintiff] or Producer [CITO] its pro-rata share of such Direct Monies determined by multiplying such Direct Monies, received by the

Company [Defendant DEVILGEAR], by Producer's [CITO] Royalty" (Exhibit "L").

39. The Producer Agreement also contains the additional "Producer Royalty Provisions" listed on "Schedule 2" in Paragraph 4 which reads as follows:

   a. "Company [Defendant DEVILGEAR] shall submit the irrevocable letter of direction in the form of Exhibit C attached hereto and incorporated herein by this reference as signed by Artist [Defendant SUIGENERIS] instructing SoundExchange to account directly to Lender [Plaintiff] or Producer [CITO] its pro-rata share at the same time and subject to the same conditions pursuant to SoundExchange accounts to Artist [Defendant SUIGENERIS]" (Exhibit "L").

40. The Producer Agreement also contains the additional "Producer Royalty Provisions" listed on "Schedule 2" in Paragraph 4 which reads as follows:

   a. "In the event that SoundExchange does not directly account to Lender [Plaintiff] or Producer [CITO] for its share of Direct Monies, Company [Defendant DEVILGEAR] shall account for and pay Lender [Plaintiff] or Producer [CITO] their share of SoundExchange Direct Monies pursuant to the terms of the 'Accounting' paragraphs below, without regard to the recoupment status of Lender [Plaintiff]/Producer's [CITO] royalty account hereunder" (Exhibit "L").

41. The Producer Agreement also contains the additional "Producer Royalty Provisions" listed on "Schedule 2" under the "Accounting" Section in Paragraph 1 which reads as follows:

   a. "Company [Defendant DEVILGEAR] shall use reasonable efforts to cause Distributor [Defendant EMPIRE] to pay Lender [Plaintiff] royalties, fees, and/or advances directly…" (Exhibit "L").

42.  The Producer Agreement also contains the additional "Producer Royalty Provisions" listed on "Schedule 2" under the "Accounting" Section in Paragraph 1 which reads as follows:

   a. "In the event that Distributor [Defendant EMPIRE] refuses or fails to pay royalties, fees, or advanced directly to Lender [Plaintiff], following Lender's [Plaintiff] written notice to Company [Defendant DEVILGEAR], Company [Defendant DEVILGEAR] shall send Lender [Plaintiff] statements regarding royalties, fees or advances payable to Lender [Plaintiff] within forty-five (45)

days of Company's [Defendant DEVILGEAR] receipt thereof together with any payments due to Lender [Plaintiff]" (Exhibit "L").

43. On or about March 2, 2018, the Defendants commercially released the album "*The Cheat Code*" on all major digital and physical content distribution platforms including but not limited to *Spotify*, *Apple Music*, *Tidal*, *Google Play*, *Audiomack*, *Amazon Music*, *SoundCloud*, the *iTunes Store*, and other monetized distribution systems which contained but is not limited to the following Infringing Work: "*Mary Jane*" (hereinafter referred to as the "Cheat Code Infringing Work") (Exhibit "M").

44. Subsequently, on or about March 15, 2019, the Defendants commercially released the album "*Suinami*" on all major digital and physical content distribution platforms including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, *Deezer*, *Audiomack*, *Amazon Music*, the *iTunes Store*, and other monetized distribution systems which contained but is not limited to the following Infringing Works as well as Registered Infringing Works: "*Frank Muller*," "*Feelings*," "*Love and Hate*," "*Dancin*," "*Really Do This*," "*Slime*," "*Nevaland*," "*Waste Away*," and "*Both Ways*" (hereinafter collectively referred to as the "Suinami Infringing Works") (Exhibit "N").

45. Later, on or about August 9, 2019, the Defendants commercially released the single "*Tip Em*" on all major digital and physical content distribution platforms including but not limited to *Spotify*, *Apple Music*, *Pandora*, *Tidal*, *YouTube Music*, *SoundCloud*, *Google Play*, *Audiomack*, the *iTune Store*, and other monetized distribution systems which contained the following Infringing Work: "*Tip Em*" (hereinafter referred to as the "Tip Em Infringing Work") (Exhibit "O").

46. Subsequently, on or about March 13, 2020, the Defendants commercially released the album "*Demons N Angels*" on all major digital and physical content distribution

platforms including but not limited to *Spotify*, *Apple Music*, *Pandora*, *Tidal*, *YouTube Music*, *SoundCloud*, *Amazon Music*, *Audiomack*, *Google Play*, *Deezer*, and other monetized distribution systems which contained but is not limited to the following Infringing Works as well as Registered Infringing Works: "*Racks Up (Racks)*," "*On God*," "*Crown*," "*Sauce*," "*Break Up*," "*Sunset*," "*Brown Justin Bieber*," "*Nintendo*," "*Faithful*," and "*Regular (Spanish)*" (hereinafter collectively referred to as the "D&A Infringing Works") (Exhibit "P").

47. The Cheat Code Infringing Work was released to critical and commercial success and provided all the earned revenues to the Defendants while nothing was paid nor accounted to the Plaintiff. In fact, The Cheat Code Infringing Work was part of an album that received and continues to receive millions of compensated plays on *Spotify* and on many other commercial distribution channels with these additional transactions solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing in further violation of the Plaintiff's rights (Exhibit "J").

48. The Suinami Infringing Works were released to critical and commercial success and provided all the earned revenues to the Defendants while nothing was paid nor accounted to the Plaintiff. In fact, the album garnered and continues to receive millions of compensated plays on *Spotify* and on many other commercial distribution channels with these additional transactions solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing in further violation of the Plaintiff's rights (Exhibit "J").

49. The Tip Em Infringing Work was released to critical and commercial success providing all the earned revenues to the Defendants while nothing was paid nor accounted to the

Plaintiff. In fact, the Tip Em Infringing Work has already garnered nearly 200,000 compensated plays on *Spotify* in addition to hundreds of thousands of monetized listens and downloads on many other major commercial distribution channels with these additional transactions solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing in further violation of the Plaintiff's rights (Exhibit "J").

50. The D&A Infringing Works were released to critical and commercial success providing all the earned revenues to the Defendants while nothing was paid nor accounted to the Plaintiff. In fact, the album garnered and continues to receive millions of compensated plays on *Spotify* and on many other commercial distribution channels with these additional transactions solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing in further violation of the Plaintiff's rights (Exhibit "J").

51. To date, the Infringing Works have collectively achieved hundreds of millions of compensated streams as well as physical and digital sales with the Defendants continuing to earn daily income through additional monetized uses without providing any compensation to the Plaintiff, let alone a proper royalty accounting statement for the revenues received by the Defendants for the exploitation of the Infringing Works (Exhibit "J").

52. Moreover, many of the Infringing Works have achieved commercial success on relevant music charts, have been featured in many popular music videos and on social media, have been performed by and continue to be a staple of Defendant SUIGENERIS' live performances, and have all helped propel the Defendant SUIGENERIS to further fame

and success (Exhibit "J").

53. Moreover, and further violating the Plaintiff's rights, many of these Infringing Works are available for streaming on major streaming services under completely false production credits as submitted by the Defendants. For example, on *Spotify*, the song credits for "*Brown Justin Bieber*," "*Nintendo*," and "*Faithful*," among others, are all fraudulently credited as the "Produced By" credit line is noticeably blank as the song credits are missing CITO's name. This material misrepresentation has previously and continues to prevent the Plaintiff from receiving the proper public attribution, notoriety, and credit mandated by the Producer Agreement and is another harmful violation of the Producer Agreement by the Defendants (Exhibit "Q").

54. On or about June 29, 2022, in response to the Defendants' extensive and continued unauthorized and uncompensated exploitation of the Infringing Works as well as due to the myriad of material breaches of the Producer Agreement by the Defendants, the Defendants were notified by Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. of the Defendants' outstanding payment obligations, its infringements of the Infringing Works, and the material breaches of the Producer Agreement by electronic mail, by certified mail with a return receipt requested, and by regular U.S. mail (hereinafter referred to as the "Breach Notice #1"). Despite the Defendants receiving the Breach Notice #1 wherein the Plaintiff requested that the Defendants provide the Plaintiff with the then owed compensation, the mandated royalty statements, and the execution of a *SoundExchange* "letter of direction" by Defendant SUIGENERIS as required by the Producer Agreement, the Defendants completely disregarded the written requests listed in the Breach Notice #1 and instead the Defendants

continued to willfully exploit and monetize the Infringing Works without permission or compensation to the Plaintiff, which use constitute copyright infringement and which actions are a willful material breach of the Producer Agreement between the Plaintiff and the Defendants (Exhibit "R").

55. In response to the Breach Notice #1, on or about June 29, 2022, the counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. and to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE that "Cito's [CITO] accounting is not properly set up with Empire [Defendant Empire], he [CITO] has not been receiving producer royalties." This written statement by Defendants DEVILGEAR and SUIGENERIS' counsel confirmed the outstanding royalties owed and that were never paid to the Plaintiff. In the same email correspondence, Vivek Sridharan, Esq. then requested via an email correspondence addressed to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE with a copy sent to Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that Defendant EMPIRE should "ensure this [the accounting] is setup" (Exhibit "S").

56. Subsequently, on or about June 29, 2022, this written request by Defendants DEVILGEAR and SUIGENERIS' counsel Vivek Sridharan, Esq. was subsequently acknowledged via email correspondence by Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE with a copy sent to Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C.. Contrary to the written assertions via email correspondence by the counsel for all the Defendants to Plaintiff's counsel Justin M.

Jacobson, Esq. of Justin Jacobson Law, P.C., no assistance in properly setting up access to accounting system was offered to the Plaintiff nor has any payment system access been setup or is operational to date (Exhibit "T").

57. Nearly a month later, on or about July 26, 2022, Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. sent an additional email correspondence to the counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. and to the "VP, Business & Legal Affairs" for Defendant EMPIRE Mike Gallegus again requesting the promised royalty statements and the funds owed to the Plaintiff. In response to this email correspondence, on or about July 26, 2022, the counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. and to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE that "Empire [Defendant EMPIRE] should pay Cito [CITO] directly." Contrary to the written assertions via email correspondence by the counsel for the Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. and to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE, Defendant EMPIRE did not and certainly have not "pa[id] Cito [CITO] directly" or the Plaintiff on behalf of CITO anything to date (Exhibit "U").

58. Furthermore, in response to the Breach Notice #1, on or about July 28, 2022, the counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. and to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE that "We [Defendants DEVILGEAR and SUIGENERIS] can definitely make

sure this is handled with Empire [Defendant EMPIRE], there is no reason it should not be." Interestingly, again contrary to the written assurances by the counsel for Defendants DEVILGEAR and SUIGENERIS to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that payment would be "handled with Empire [Defendant EMPIRE]," nothing was ever handled by any of the Defendants who continue to exploit the Infringing Works for nearly two years after specifically acknowledging and being aware of the Defendants' obligation to compensate and to account to the Plaintiff for the previous, current, and future usage of the Infringing Works (Exhibit "U").

59. Consequently, even after the Defendants received and acknowledged the owed payments, the existing and continuous infringement of the Infringing Works, and the listed material breaches of the Producer Agreement stated in the Breach Notice #1 through the various email correspondence between the Plaintiff and the Defendants' counsel, the Defendants still failed to remedy or otherwise cure any of the listed deficiencies in the Breach Notice #1. Accordingly, on or about August 9, 2022, the Defendants were provided with another formal breach notice by electronic mail and the Defendants were again notified by the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. of the Defendants' still outstanding payment obligations, demanding that the Defendants' cease its ongoing infringement of the Infringing Works, and requiring the Defendants to immediately cure all of the Defendants' material breaches of the Producer Agreement (hereinafter referred to as the "Breach Notice #2"). Despite receiving Breach Notice #2, the Defendants instead disregarded the contentions and continued to willfully exploit the Infringing Works without permission or compensation to the Plaintiff, which use constitute additional examples of willful copyright infringement and these actions are

also further material breaches of the Producer Agreement between the Plaintiff and the Defendants. Accordingly, since the Defendants failed to timely cure any of the enumerated material breaches even after receiving proper written notices, the Plaintiff formally terminated and invalidated the Producer Agreement rendering it *void ab initio* thereby revoking any and all licenses, rights, terms, obligations, duties, and/or other authorizations granted, provided, and/or otherwise issued to the Defendants by the Plaintiff under the Producer Agreement (Exhibit "V").

60. In response to the Breach Notice #2, on or about August 10, 2022, the "Director of Business and Legal Affairs" for Defendant EMPIRE Matthew Meneses stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that "I [Defendant EMPIRE] will have our [Defendant EMPIRE] accounting team prepare a statement. Talk to you [Plaintiff] tomorrow." Contrary to the written assertions in email correspondence sent by the "Director of Business and Legal Affairs" for Defendant EMPIRE Matthew Meneses, it is nearly two years later, and the Plaintiff is still awaiting the promised accounting statement from Defendant EMPIRE which has still not be provided to the Plaintiff (Exhibit "W").

61. Subsequently, on or about August 16, 2022, a *Microsoft Excel* spreadsheet document purporting to be an "accounting statement" was provided by the counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. stating that the Plaintiff was "owed" royalties amounting to "$1368.50" based on the provided "accounting statement" (hereinafter referred to as the "Excel Accounting Statement"). (Exhibits "X" & "Y").

62. Contrary to the assertions to the validity of the Excel Accounting Statement provided by
the Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. via email
correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson
Law, P.C., the provided "accounting statement" does not contain any specific information
or sales figures commonly included in or associated with these types of transactions nor
does it possess any identifying information of the issuing party including listing any of
the Defendants. In fact, a valid royalty accounting statement contains highly detailed
information on the remitting and receiving party while also listing each digital platform
and revenue channel that all the listed sums originate from, which is standard and
established under long-standing industry custom and practice. However, instead of
providing a valid royalty accounting statement to the Plaintiff as required by the Producer
Agreement and as is industry custom, the Excel Accounting Statement provided by the
Defendants seemed to be entirely fabricated and was provided in bad faith by the counsel
for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. via email
correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson
Law, P.C. In particular, the "accounting statement" was merely a list of track names with
arbitrary and unsubstantiated monetary figures listed next to each composition signifying
the amount of the Plaintiff's income on each composition without any specific
information normally contained in or associated with these types of accounting
statements. Accordingly, it is clear that the Excel Accounting Statement provided by the
counsel for Defendants DEVILGEAR and SUIGENERIS Vivek Sridharan, Esq. via
email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin
Jacobson Law, P.C. is not a valid accounting statement and that the Excel Accounting

Statement is certainly not in a proper format and it does not contain any of the required and industry custom information that suffices or otherwise fulfills the Defendants' duties and obligations to the Plaintiff under the Producer Agreement and these actions constitute additional violations of the Plaintiff's rights and of the Producer Agreement (Exhibit "Z").

63. As a result of the Defendants continued willful infringement and wrongful monetization of the Infringing Works without any compensation to the Plaintiff and in an attempt to mitigate the Plaintiff's damage and to protect Plaintiff's rights in the Infringing Works, taking into account the lack of any reasonable or plausible "fair use" claim by the Defendants, in or about August 2022, the Plaintiff through its authorized representative Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. filed a series of "takedown" notices under the Digital Millennium Copyright Act ("DMCA") against the Infringing Works that are and have previously been unlawfully displayed and offered for sale as digital download files, audio-visual works, and musical streams featuring the Infringing Works, including submitting appropriate DMCA takedown notices to *Spotify* (filed on August 1, 2022), *Facebook* (filed on August 3, 2022), *Pandora* (filed on August 1, 2022), *Apple Music* (filed on August 1, 2022), *SoundCloud* (filed on August 1, 2022), *Tidal* (filed on August 15, 2022), *Audiomack* (filed on August 2, 2022 and August 15, 2022), *Deezer* (filed on August 15, 2022), and *YouTube* (filed on August 1, 2022) (hereinafter collectively referred to as the "DMCA Takedown Notices") (Exhibit "AA").

64. In further violation of the Plaintiff's rights and in direct violation of § 512(f)(2) of the DMCA Act, on or about August 23, 2022, Defendant EMPIRE knowingly and materially misrepresented that the DMCA Takedown Notices filed by the Plaintiff were a "mistake"

or alternatively, a "misidentification" made by the Plaintiff by filing a false counter-notice with *YouTube* and with other digital music distributors and internet service providers ("ISPs") (hereinafter collectively referred to as the "DMCA Counter-Notices") wherein Defendant EMPIRE disputed the contents of the DMCA Takedown Notices rightfully filed by the Plaintiff. In fact, in the DMCA Counter-Notices, Defendant EMPIRE through its authorized representative Peter Arensdorf stated that "under penalty of perjury, that I [Defendant EMPIRE] have a good faith belief the material [Infringing Works] was removed due to a mistake or misidentification of the material to be removed or disabled" and that Defendant EMPIRE had the "full right and power to grant […] exclusive rights right the content [Infringing Works]." It is clear and irrefutable that Plaintiff owns rights to the Infringing Works and that Defendant EMPIRE's actions are not protected by "Fair Use" and that Defendant EMPIRE clearly has no good faith or reasonable belief that the DMCA Takedown Notices filed by the Plaintiff were a "mistake" or "misidentification." Accordingly, these wrongful and fraudulent actions perpetuated by Defendant EMPIRE have previously and are currently continuing to cause substantial damage to the Plaintiff (Exhibit "BB").

65. Specifically and further highlighting the Defendants' continued bad faith and improper actions directed at harming the Plaintiff's business interests, on or about September 7, 2022, as a result of the DMCA Counter-Notices fraudulently filed by Defendant EMPIRE, all of the Infringing Works that were originally rightfully removed by the Plaintiff utilizing the DMCA Takedown Notices were reinstated by *YouTube* (among other digital distribution platforms) thereby reenabling the infringing content and allowing the Defendants to continue perpetuating its unlawful and willful infringement of

the Infringing Works and in furtherance of the Defendants' ongoing violation of the Plaintiff's rights in the Infringing Works. To date, the Infringing Works identified in the DMCA Takedown Notices filed by the Plaintiff continue to be monetized by the Defendants as a result of Defendant EMPIRE's filing of the DMCA Counter-Notices (Exhibit "CC").

66. While the Infringing Works continued to wrongfully accrue income for the Defendants and as the Plaintiff's rights continued to be substantially damaged by the Defendants' unlawful infringement; on or about March 28, 2023, Defendant SUIGENERIS on his public *Instagram* social media account (instagram.com/xosuigeneris) created an *Instagram* "story" which is a static social media "post" that is publicly available and accessible to his nearly 900,000 followers featuring an authorized photograph of CITO wherein the caption of the *Instagram* "story" created by Defendant SUIGENERIS stated and identified him as "the producer [CITO] that tried to take down my yt [*YouTube*] and sc [*SoundCloud*] and all my [Defendant SUIGENERIS] songs," including the Infringing Works, followed by a several "rat" emojis intending to public defame and harm CITO's personal and business reputation by insinuating that the Plaintiff's client CITO was a "rat" which in this context, has a fairly negative and harmful connotation as purposefully utilized by the Defendant SUIGENERIS (hereinafter referred to as the "Instagram Story"). The public statement in the Instagram Story was intentionally and knowingly made by Defendant SUIGENERIS to his hundreds of thousands of fans in order to cause substantial damage to CITO and the Instagram Story did, in fact, cause serious harm to CITO's business and personal reputation including the loss of potential business opportunities and as a result, the Instagram Story has and continues to cause severe

damaged to the Plaintiff as the exclusive licensor and rights holder of CITO's musical works (Exhibit "DD").

67. It is clear that the Defendants had actual knowledge that the Plaintiff had received zero compensation for the recordings and compositions owned by the Plaintiff while the Infringing Works were and are continually generating revenue through the Defendants' unlawful monetization of it.

68. In fact, in response to the Plaintiff's several written requests for payment, income accounting statements, and proper producer credits and royalties, the Defendants told the Plaintiff, "[w]e can definitely make sure this is handled with Empire" and then the Defendants added that "there is no reason it should not be" by Defendant EMPIRE.

69. But the Defendants never intended to fulfill its repeated promises that "Empire should pay Cito" with respect to production credit, licensing fees, royalties, and all other owed obligations under the Producer Agreement.

70. While the Infringing Works have generated almost five years of streaming and sales revenue, among other income, the Defendants never paid the Plaintiff any income or royalties based upon any of these revenues. In fact, it is clear that substantial revenue is generated daily as prior to the viewing of and/or during each of the Infringing Works on *YouTube* an advertisement appears for which the Defendants are entitled to and receive a royalty or other revenue on, which is the Plaintiff's money.

71. Even after receiving Breach Notice #1, Breach Notice #2, and DMCA Takedown Notices (hereinafter collectively referred to as the "Breach Notices") and forcing the Plaintiff's to formally invalidate and terminate the Producer Agreement due to the Defendants' repeated and willful failure to cure its enumerated material breaches and as result, the

Defendants' ongoing infringing actions that occurred after receiving the Breach Notices constituted actionable willful infringement of the Plaintiff's rights in the Infringing Works.

72. Despite the Breach Notices provided by the Plaintiff to the Defendants, all of the Defendants have still continued to infringe the Plaintiff's copyrighted works. The infringement by the Defendants is willful, as evidenced by its continuing to infringe all the Infringing Works even after the Breach Notices were provided and acknowledged by them.

73. In sum, the Plaintiff has not been paid any royalties from the Defendants as it relates to the Infringing Works, despite the compositions and recordings being used in songs that collectively have hundreds of millions of monetized streams across all major distribution platforms.

74. To date, even after the Defendant received several notices of the various breaches of the Producer Agreement, no accounting or obligated payment has been made to the Plaintiff nor have the Defendant used any effort to have Defendant EMPIRE distribute any royalties, in fact, the Defendants have gone as far as to deny that any royalties are actually owed to the Plaintiff in further violation of the Producer Agreement.

75. To date, even after Defendant DEVILGEAR received several notices of the various breaches of the Producer Agreement and even after the Plaintiff demanded the provision of the contractually promised irrevocable letter of direction for *SoundExchange*, no signature or reasonable (or any) assistance was or has been provided to the Plaintiff to enable the Plaintiff to properly monetize its owned works including through obtaining its legally and contractually promised "Direct Monies" from *SoundExchange*.

76. To date, even after Defendant DEVILGEAR received several notices of the various breaches of the Producer Agreement and even after the Plaintiff demanded the provision of the contractually promised "Direct Monies" from SoundExchange, no funds were ever provided to the Plaintiff for the works that Defendants' unlawfully monetized while, upon reasonable information and belief, the Defendants are and have been retaining all "Direct Monies" from SoundExchange related to the Infringing Works and which are rightfully owed to the Plaintiff.

77. To date, each of the Defendants reproduced, distributed, publicly performed and/or authorized the reproduction, distribution, and public performance of the Infringing Works including incorporating them into compositions and sound recordings and each of the Defendants continues to infringe the Infringing Works.

78. The Defendants are also in breach of the Producer Agreement due to the repeated material failures to render royalty accountings and payments to Plaintiff since the inception of the litigation.

79. Accordingly, the Plaintiff institutes the instant copyright infringement and breach of contract action because Defendant SUIGENERIS and the other Defendants in this action have knowingly, willing, and continuously used of at least twenty-one (21) of CITO's compositions and recordings owned by the Plaintiff without authorization and without compensation in violation of the law including but not limited to the Infringing Works identified herein.

80. The Defendants knowingly and intentionally infringed Plaintiff's rights including fraudulently opposing validly issued the DMCA Takedown Notices by filing the DMCA Counter-Notices. The Defendants' collective knowledge and intent is established by,

among other things, the fact that Defendants, to this day have neither sought, nor obtained, a license from the owners of the rights nor provide any promised payment, accounting statement, or even access to obtain these contractually obligated monies. All conditions precedent to the maintenance and/or establishment of the instant action have been satisfied and/or, otherwise, waived by the Defendants.

**FIRST CAUSE OF ACTION**
**(Willful Copyright Infringement – 17 U.S.C. 101, *et. seq.*)**
**Against All Defendants**

81. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

82. Upon information and belief, the Defendant, SUIGENERIS, infringed on the Plaintiff's exclusive copyright in the Registered Infringing Works when it distributed and sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying each of the Registered Infringing Works and by distributing and broadcasting the Registered Infringing Works on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Amazon*, *Pandora*, *Tidal*, *Deezer*, *Google Play*, and *YouTube*, selling recordings of the Registered Infringing Works, and publicly performing of the Registered Infringing Works live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant SUIGENERIS has realized illegal revenues.

83. Upon information and belief, the Defendant, DEVILGEAR, infringed on the Plaintiff's

exclusive copyright in the Registered Infringing Works when it distributed and sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying each of the Registered Infringing Works and by distributing and broadcasting the Registered Infringing Works on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Amazon*, *Pandora*, *Tidal*, *Deezer*, *Google Play*, and *YouTube*, selling recordings of the Registered Infringing Works, and authorizing the public performance of the Registered Infringing Works live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant DEVILGEAR has realized illegal revenues.

84. Upon information and belief, the Defendant, EMPIRE, also infringed on the Plaintiff's exclusive copyright in the Registered Infringing Works under the Copyright Act when it distributed and sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying each of the Registered Infringing Works and by distributing and broadcasting the Registered Infringing Works on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Amazon*, *Pandora*, *Tidal*, *Deezer*, *Google Play*, and *YouTube*, selling recordings of the Registered Infringing Works, and authorizing the public performance of the Registered Infringing Works live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant EMPIRE has realized illegal revenues.

85. Upon information and belief, the Defendants' reproduction, distribution, and public performances of the Registered Infringing Works in the United States and internationally, continue to this day, and the Defendants have not deigned to compensate the copyright owner of the Registered Infringing Works.

86. Upon information and belief, the Defendants' reproduction, distribution, public performance, streaming, concerts, merchandizing, synchronization, licensing and economic exploitation of the Registered Infringing Works, and authorizing others to do the same, infringes the Plaintiff's exclusive rights in the Registered Infringing Works under Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

87. Upon information and belief, the foregoing acts of infringement that the Defendants have committed are all deliberately, willfully, intentionally, maliciously, and oppressively, without regard to the Plaintiff's proprietary rights and are in total disregard of and indifference to the Plaintiff's rights in the Registered Infringing Works.

88. Upon information and belief, the Defendants infringed the Plaintiff's exclusive copyright in Registered Infringing Works when they issued and/or authorized others to issue licenses to third parties for the use, publication, and/or exploitation of the Infringing Works without any compensation or payment to the Plaintiff. Said licenses were issued without any consent or authority from the copyright owner, the Plaintiff due to failing to compensate the Plaintiff for such licenses. By virtue of these unauthorized commercial exploitations, the Defendants have realized illegal revenues.

89. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the Registered Infringing Works, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

90. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the Registered Infringing Works, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

91. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per infringement for the Defendants' willful infringement of each of the Registered Infringing Works since the infringement of the Registered Infringing Works occurred after the copyrights were registered and occurred after the Registered Infringing Works had already been published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

92. The Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

93. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Registered Infringing Works including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

94. Due to the Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have

realized but for the infringement of the Plaintiff's rights in the Registered Infringing Works. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringements of the Registered Infringing Works in an amount to be established at trial.

95. Plaintiff is informed and believes and now alleges that the Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## SECOND CAUSE OF ACTION
### (For Vicarious and/or Contributory Copyright Infringement – 17 U.S.C. 101, *et. seq.*)
### Against All Defendants

96. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

97. Upon information and belief, the Plaintiff now alleges that the Defendants, and each of them, are contributorily and/or vicariously liable for the infringement and infringing conduct of others alleged herein because the Defendants, and each of them, had the right and ability to supervise the infringing conduct and because the Defendants, and each of them, had a direct financial interest in the infringing conduct and the Defendants knowingly induced, participated in, caused, materially contributed to, aided and abetted in and profited from the illegal reproduction, distribution, and publication of the Registered Infringing Works as alleged above. The Defendants, and each of them, had the ability to oversee the publication and distribution of the Registered Infringing Works and

underwrote, facilitated, and participated in the other Defendants' infringement of the Registered Infringing Works. Defendants, and each of them, realized profits through their respective reproduction, distribution, and publication of the Registered Infringing Works.

98. With knowledge of the infringement, the Defendants, and each of them, have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

99. The Defendants, and each of them, had the right and ability to control other infringers and the Defendants, and each of them, have derived a direct financial benefit from that infringement such that the Defendants should be found to be vicariously liable.

100. The infringement is continuing as the Registered Infringing Works continue to be sold and all the Registered Infringing Works continue to be licensed for sale, download, ringtones, streaming, and other exploitations by the Defendants, or their agents without any compensation to the Plaintiff.

101. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

102. As a direct and/or proximate result of the Defendants' acts of contributory and vicarious infringement on the Plaintiff's exclusive copyright in the Registered Infringing Works as alleged above, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

103. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per

infringement for the Defendants' willful infringement of each of the Infringing Works since the infringement of the Registered Infringing Works occurred after the copyrights were registered and occurred after the Registered Infringing Works had already been published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

104. The Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

105. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Registered Infringing Works, including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

106. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that the Defendants would not otherwise have realized but for their infringement of the Plaintiff's rights in the Infringing Works. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringement of the Plaintiff's rights in the Registered Infringing Works in an amount to be determined at trial.

107. The Plaintiff is informed and believes and now alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting the Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating

disgorgeable profits.

### THIRD CAUSE OF ACTION
### (Breach Of Contract)
### Against All Defendants

108. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

109. The Producer Agreement is a valid and binding contract.

110. The Plaintiff has performed all of its obligations under the Producer Agreement.

111. Pursuant to Paragraph 7 "Fee/Royalty" of the Producer Agreement, the Plaintiff is entitled to "a royalty in the amount of Ten Percent (10%)" of the "Artist's share of 'Net Income (hereinafter referred to as the "Royalty Payment").

112. By reason of the foregoing, the Defendants have breached the Producer Agreement by failing and continually refusing to provide the Plaintiff with the Royalty Payment due under the Producer Agreement, even after receiving several written notices requesting the same.

113. Pursuant to Paragraph 10 "Credit" of the Producer Agreement, the Plaintiff is entitled to "credit" on all "metadata," including on *Spotify* (hereinafter referred to as the "Credit Requirement").

114. By reason of the foregoing, the Defendants have further breached the Producer Agreement by failing and continually refusing to provide the Plaintiff with appropriate credit (or any credit at all) as mandated by the Credit Requirement under the Producer Agreement, even after receiving several written notices requesting the same.

115. Pursuant to Paragraph 3 of Schedule 2 "Producer Royalty Provisions" of the Producer Agreement, the Plaintiff is entitled to a "Producer's Royalty [...] equal" to "fifty percent

(50%) of the otherwise applicable royalty" (hereinafter referred to as the "Audio-Visual Royalty").

116. By reason of the foregoing, the Defendants have further breached the Producer Agreement by failing and continually refusing to provide the Plaintiff with any royalties or income, let alone the fifty percent of the Audio-Visual Royalty earned by the Defendants as required under the Producer Agreement.

117. Pursuant to Paragraph 4 of Schedule 2 "Producer Royalty Provisions" of the Producer Agreement, the Plaintiff is entitled to "its pro-rata share of such Direct Monies" from "SoundExchange" that are "directly attributable to the Master(s)" (hereinafter referred to as the "SoundExchange Monies").

118. Pursuant to Paragraph 4 of Schedule 2 "Producer Royalty Provisions" of the Producer Agreement, the Defendants shall "submit the irrevocable letter of direction […] attached hereto" hereinafter referred to as the "SoundExchange LOD") and that the Defendants shall "directly account" to Plaintiff for any "SoundExchange Direct Monies" the Plaintiff is entitled to if "SoundExchange does not directly account to" Plaintiff "for its share of Direct Monies."

119. By reason of the foregoing, the Defendants have further breached the Producer Agreement by failing and continually refusing to execute the SoundExchange LOD and by failing continually refusing to provide the Plaintiff with any royalties or income, let alone the SoundExchange Monies earned by the Defendants as required under the Producer Agreement.

120. Pursuant to Paragraph 1 of "Accounting" on Schedule 2 "Producer Royalty Provisions" of the Producer Agreement, the Defendants shall "use reasonable efforts" to "pay" the

Plaintiff "royalties, fees, and/or advances directly…" and in the event that Defendant EMPIRE "refuses or fails to pay royalties, fees, or advanced directly …," then after the Defendants' receipt of written notice, Defendants DEVILGEAR and/or SUIGENERIS is required to "send" the Plaintiff "statements regarding royalties, fees, or advances payable […] within forty-five (45) days" of Defendants DEVILGEAR and/or SUIGENERIS "receipt" (hereinafter referred to as the "Royalty Accountings").

121. By reason of the foregoing, the Defendants have further breached the Producer Agreement by failing and continually refusing to provide the outstanding Royalty Payment and by failing continually refusing to provide the Plaintiff with the Royalty Accountings, let alone any information on the "royalties, fees, or advances" owed to the Plaintiff and as required under the Producer Agreement

122. Defendants have breached the Producer Agreement by also failing and refusing to render royalty accounting statements to the Plaintiff as required pursuant to the provisions of Paragraph 7 thereof.

123. By reason of the foregoing, the Defendants have materially breached the Agreement between the parties by improperly withholding royalties belonging to Plaintiff.

124. By reason of the foregoing, the Defendants several uncured material breaches of the Producer Agreement have denied the Plaintiff the benefit of its bargain and invalidates the Producer Agreement as *void ab initio*.

125. By reason of the foregoing, the Plaintiff has been damaged by the Defendants' willful material breaches in an amount to be determined at trial. The Defendants' breach is continuous, and unless enjoined by this Court will continue.

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition By Misappropriation)
### Against All Defendants

126. The Plaintiff licenses original musical compositions and recordings created by its signed and financed musicians for its work, including CITO, which often takes the form of original instrumentals and recordings, at a substantial cost to the Plaintiff. The Defendants likewise creates and releases and monetizes original music to the public including musical works like the Plaintiff.

127. By offering the Infringing Works that are created and owned by the Plaintiff which are the same content licensable by the Plaintiff, the Defendants directly compete with the Plaintiff's work. The Defendants' use of the Plaintiff's works misappropriated the fruit of Plaintiff's labors and usurps the specific commercial opportunities of the Plaintiff, such as the revenue generated by licensing, selling, or otherwise monetizing the musical compositions and recordings contained in the Infringing Works elsewhere. For example, by contracting for the exclusive rights to the Infringing Works with the Plaintiff without providing any contractually obligated payment or compensation at all, the Defendants have deprived the Plaintiff of the opportunity to receive alternative revenue through the sale or licensing of the musical compositions and recordings contained in the Infringing Works elsewhere due to the Defendants incorporating, monetizing and appropriating that opportunity for solely for the Defendants thereby prohibiting any other musical artist from commercializing or obtaining the musical compositions and recordings contained in the Infringing Works from the Plaintiff for just compensation.

128. The Defendants' uses, including the release of the musical compositions and recordings contained in the Infringing Works, directly competes with the Plaintiff's uses and impairs

their ability to release, commercialize, and/or otherwise monetize the musical

compositions and recordings contained in the Infringing Works with others including

other similar recording artists.

129. The Defendants' uses, including the release of the musical compositions and recordings

contained in the Infringing Works without compensation or any payment to the Plaintiff

constitutes free-riding on the Plaintiff's significant efforts and investment of human

capital to create and license the musical compositions and recordings contained in the

Infringing Works.

130. The Defendants' misuse and misappropriation of the musical compositions and

recordings contained in the Infringing Works has caused the Plaintiff to suffer actual

damages from the deprivation of the benefits of its works, such as, without limitation, lost

licensing, sales, and other related revenues.

131. As such, the Defendants engaged in unfair competition through fraud and/or bad faith and

misappropriated the labor and expenditures of the Plaintiff for its own unjust and unlawful

gain, and at the expense of the Plaintiff's own opportunities.

132. The Plaintiff suffered damages as a result of the Defendants unfair competition and

misappropriation in an amount to be determined at trial.


**FIFTH CAUSE OF ACTION**
**(Violation of Digital Millennium Copyright Act § 512(f)(1), (2) for Misrepresentation)**
**Against All Defendants**

133. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in

the preceding Paragraphs of the Complaint as if they were fully set forth herein.

134. The Plaintiff issued the DMCA Takedown Notices in the appropriate form and substance

as required under the DMCA against the Defendants for its unauthorized usage and
commercial use of the Infringing Works as the Infringing Works were clearly
infringements as they were copyrighted works that were and are currently transmitted and
publicly available for the unauthorized commercial consumption, streaming, and viewing
in violation of the Plaintiff's rights in the Registered Infringing Works under Section 512
of Digital Millenium Copyright Act, 17 U.S.C. § 512.

135. Upon information and belief, the Defendants knowingly and materially misrepresented
that the DMCA Takedown Notice provided by the Plaintiff was not in reference to
"material or activity" that is infringing as it is clear that the Defendants' usage are
infringing and that there is no plausible or reasonable "fair use" exemption existing in
direct violation of Section 512(f)(1) of the DMCA, 17 U.S.C. § 512(f)(1).

136. Upon information and belief, the Defendants further knowingly and materially
misrepresented that the DMCA Takedown Notice provided by the Plaintiff was submitted
by mistake or by misidentification by the Plaintiff in direct violation of Section 512(f)(2) of
the DMCA, 17 U.S.C. § 512(f)(2).

137. Upon information and belief, the Defendants acted with actual knowledge of the falsity of
the DMCA Counter-Notices filed by Defendant EMPIRE as it is undisputed that the
Plaintiff was injured and harmed as a result of the Defendants' infringing actions as the
Plaintiff rightfully owns the Infringing Works and the Defendants actions were not
protected by "fair use."

138. Accordingly, under 17 U.S.C. § 512(f)(2), the Defendants are liable for the damages
suffered by the Plaintiff, including costs and attorneys' fees in an amount to be determined
at trial.

139. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 512(j), the Plaintiff is entitled to a permanent injunction prohibiting and restraining the third-party service providers from publicly displaying the Infringing Works contained on the particular online site, or, in the alternative, terminating the Defendants' accounts and providing the Plaintiff with the owed compensation in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Trademark Infringement under 15 U.S.C. § 1125(c))
### Against All Defendants

140. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

141. The Plaintiff is the owner of the CITO Trademark.

142. The CITO Trademark is distinctive and famous, and the CITO Trademark has been continuously used in commerce for the listed services for nearly a decade having been associated with millions of commissionable plays and views and associated with some of the world's artists musical acts.

143. Upon information and belief, the Defendants have, in connection with the commerce of selling, licensing, publicly performing, and displaying of the CITO Trademark to consumers for profit throughout the United States, including in New York, and have engaged in the unauthorized use of the Plaintiff's trademarks by incorporating the CITO Trademark without authorization or rights on all public materials, media, and press listings without proper authorization or permission from the Plaintiff.

144. The Defendants' unauthorized use of the CITO Trademark on the infringing musical compositions and recordings dilutes the quality of the CITO Trademark by tarnishment in violation of 15 U.S.C § 1125(c).

145. Upon information and belief, the Defendants are aware that the CITO Trademark is wrongfully attributed to the Defendants' Infringing Works as no proper rights or authorization have been secured from the Plaintiff to utilize the protected tradename and yet the Defendants continue to profit commercially from creating and attributing the Infringing Works to the Plaintiff by labeling it with the Cito Trademark. As such, Defendants have intentionally violated 15 U.S.C § 1125(c).

146. As an actual and proximate result of the unauthorized use of the Plaintiff's the CITO Trademark, the Plaintiff has suffered and continues to suffer harm by, among other things, damaging its reputation for accuracy, originality, and quality, which has and will continue to cause it economic loss.


### <u>SEVENTH CAUSE OF ACTION</u>
### (Violation of Right of Publicity under N.Y. Civil Rights Law § 50)
### Against All Defendants

147.   Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

148.   Upon information and belief, the Defendants, without the Plaintiff and/or CITO's consent or approval, have and continue to publicly advertise and utilize the exclusive licensee of the Plaintiff's CITO's name and likeness in violation of CITO's right of publicity, including by the Defendants' intentionally and willfully publicly inserting CITO's protected name

"Citoonthebeat" on various publicly available commercialized exploitation containing the Infringing Works in violation of the Right of Publicity under N.Y. Civ. Law § 50.

149.    The Defendants did not receive any written or other formal consent or authorization of the Plaintiff to utilize CITO's artist name on the commercialized Infringing Works and as a result, the Defendants have caused damage to and continue to damage the Plaintiff's business interests due to the Defendants' unauthorized commercial usage of CITO's name.

150.    Upon information and belief, even after receiving written notice of the Defendants' violations, the Defendants willfully and intentionally failed to remedy and continued with its unauthorized usage of CITO's name without any compensation.

151.    By reason of the foregoing, the Plaintiff has been damaged by the Defendants' knowing and intentional unauthorized usage of CITO's name in an amount to be determined at trial.

152.    By reason of the foregoing, the Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to N.Y. Civ. Law § 51, the Plaintiff is entitled to a permanent injunction prohibiting and restraining the Defendants from publicly displaying CITO's name in connection with the Infringing Works.

**EIGHTH CAUSE OF ACTION**
**(State Law Claim for Defamation)**
**Against Defendant SUIGENERIS**

153.    Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

154.    Defendant SUIGENERIS made certain statements about CITO including, without limitation those referenced above in the Instagram Story disparaging CITO's integrity,

character, and lawfulness causing damage to the Plaintiff's business.

155.    These certain statements about CITO including, without limitation those set forth above constitute defamatory statements of fact (the "Defamatory Statements") in that they allege that CITO is a "rat" which has a negative associated connotation of being labelled as a "snitch" or "informant."

156.    The Defamatory Statements are false.

157.    Defendant SUIGENERIS made the Defamatory Statements to third parties including, without limitation, the world, since the Instagram Story was posted to his social media account over nearly 900,000 followers, knowing they were false, with reckless disregard for the truth or with negligent disregard for the truth.

158.    Defendant SUIGENERIS made and/or published the Defamatory Statements to third parties as evidenced by the fact that the Instagram Story was posted to his publicly accessible social media account and viewed by hundreds of thousands of people including any and all of his followers as well as any other *Instagram* user as Defendant SUIGENERIS's *Instagram* social media profile is "public" so it is publicly accessible and viewable by any other individual.

159.    The Defamatory Statements constitute slander per se and/or libel per se in that they charge CITO with serious moral turpitude, the commission of falsely filing documents in the form of the rightfully and legally filed the DMCA Takedown Notices.

160.    The Defamatory Statements also constitute slander per se and/or libel per se in that they tend to injure the Plaintiff in its trade, business and/or profession and/or its fitness to perform its personal and professional duties by harming its ability to monetize works created by CITO by stating that the Plaintiff acts illegally and submits wrongful DMCA Takedown Notices.

161.    The Defamatory Statements are not and never were privileged.

162.    While proof of damages is not required, the Defamatory Statements have caused the

Plaintiff substantial damages including to its reputation, business interests and/or prospective

economic opportunities.

163.    Defendant SUIGENERIS published the Defamatory Statements to third parties with the

foreseeable and intended result of poisoning CITO's career and trying to preserve the

Defendant SUIGENERIS' own reputation, and have, as a result, caused additional damages

to the Plaintiff.

164.    Defendant SUIGENERIS' conduct was sufficiently knowing, malicious, willful and

wonton such that the Plaintiff is entitled to an award of punitive damages.

165.    As a result of Defendant SUIGENERIS', the Plaintiff is entitled to an award of

compensatory and punitive damages in an amount to be determined at trial but believed to be

not less than $1,000,000.00.


**NINTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**Against All Defendants**

166.  Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in

the preceding Paragraphs of the Complaint as if they were fully set forth herein.

167.  The Defendants knowingly and intentionally licensed the Infringing Works, and

controlled licensing, mechanical licensing, and collection of royalties.

168.  The Defendants knowingly and intentionally signed mechanical licenses with record

labels authorizing the inclusion of the Infringing Works.

169.  The Defendants have benefitted substantially from and exploitation of the Infringing

Works.

170.  The Defendants have received a monetary benefit from the Infringing Works in the form of licensing, mechanical licensing, and collection of royalties, among other revenue.

171.  The Defendants accepted the benefits from exploitation of the Infringing Works such that it would be inequitable for the Defendants to retain the benefits received from the Infringing Works without fully compensating the Plaintiff for unauthorized use of the protected compositions and recordings contained in the Infringing Works.

172.  The Plaintiff has been deprived of compensation associated with the protected compositions and recordings contained in the Infringing Works.

173.  The Plaintiff has been deprived of its right to select a party to administer the catalog of the protected compositions and recordings and to control the distribution, licensing, mechanical licensing, and collection of royalties.

174.  The Defendants have been unjustly enriched by exploitation of the Infringing Works including through the unauthorized administration of the catalog of the protected compositions and recordings contained in the Infringing Works, licensing, mechanical licensing, and collection of royalties.

175.  Accordingly, the Plaintiff is entitled to damages for the Defendants' unjust enrichment in an amount to be determined at trial and the Defendants should be required to disgorge their ill-gotten profits attributable to its infringement of the Infringing Works.

**TENTH CAUSE OF ACTION**
**(Declaratory Judgment)**
**Against All Defendants**

176.     Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set

forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

177.     As set forth above, the Defendants failed to fulfill many of its obligations under

the Producer Agreement including not providing the Plaintiff with any owed royalties or

accounting statements as required by the Producer Agreement to the Plaintiff even after

receiving several notices of material breaches.

178.     Despite receiving numerous written notices and engaging in extensive email

correspondence, the Defendants failed to cure or otherwise remedy any of the enumerated

breaches; and instead, the Defendants filed false DMCA Counter-Notices to challenge the

validity of the DMCA Takedown Notices rightfully filed by the Plaintiff to enable the

Defendants to continue its ongoing infringement of the recordings and compositions owned

by the Plaintiff.

179.     In addition, the Infringing Works continue to be unlawfully monetized and

exploited by the Defendants without any compensation or proper authorization from the

Plaintiff including the Defendants failing to account and/or provide the Plaintiff with the

owed "Direct Monies" from *SoundExchange*.

180.     The Plaintiff is entitled to a declaration that the Defendants are improperly

withholding royalties that belong to the Plaintiff in material breach of the Producer

Agreement including but not limited to "Direct Monies" from *SoundExchange*.

181.     The Plaintiff is entitled to a declaration that the Defendants are improperly failing

and refusing to render royalty accounting statements to the Plaintiff in material breach of the

Producer Agreement.

182.       The Plaintiff is entitled to a declaration that Defendants have willfully infringed

Plaintiff's copyrighted works in violation of the Copyright Act in violation of 17 U.S.C. §§

106 and 501.

183.       The Plaintiff is entitled to a declaration that Defendants are directly, vicariously,

and/or contributorily liable for copyright infringement, as applicable.

184.       The Plaintiff is entitled to a declaration that Defendants are required to account

for all profits, income, receipts, or other benefits derived by the Defendants as a result of its

unlawful conduct.

185.       The Plaintiff is entitled to a declaration that the Plaintiff retains all rights to the

underlying recordings and compositions contained in the Infringing Works.

186.       The Plaintiff is entitled to a declaration that the Plaintiff owns all rights in the

compositions and recordings contained in the Infringing Works.

187.       The Plaintiff is entitled to a declaration enjoining the Defendants from further

withholding the Plaintiff's royalties.

188.       The Plaintiff is entitled to a declaration enjoining the Defendants from refusing to

render royalty accounting statements to the Plaintiff.

189.       The Plaintiff is entitled to a declaration enjoining the Defendants from publicly

displaying the Infringing Works contained on any online sites, pursuant to 17 U.S.C. §

512(j).

190.       The Plaintiff is entitled to a declaration enjoining the Defendants from publicly

displaying CITO's name in connection with the Infringing Works, pursuant to N.Y. Civil

Rights Law § 51.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff respectfully requests and prays that judgment be entered

against Defendants and for the following relief as follows:

(A) A declaration that:

1.  The Defendants are improperly withholding royalties that belong to the

     Plaintiff in material breach of the Producer Agreement including but not

     limited to "Direct Monies" from *SoundExchange*.

2.  The Defendants are improperly failing and refusing to render royalty

     accounting statements to the Plaintiff in material breach of the Producer

     Agreement.

3.  The Defendants have willfully infringed Plaintiff's copyrighted works in

     violation of the Copyright Act.

4.  The Defendants are directly, vicariously, and/or contributorily liable for

     copyright infringement.

5.  The Defendants are required to account for all profits, income, receipts, or

     other benefits derived by the Defendants as a result of its unlawful conduct.

6.  The Plaintiff retains all rights to the underlying recordings and compositions

     contained in the Infringing Works.

7.  The Plaintiff owns all rights in the compositions and recordings contained in

     the Infringing Works.

8.  The Defendants are enjoined from further withholding the Plaintiff's royalties.

9.  The Defendants are enjoined from refusing to render royalty accounting

     statements to the Plaintiff.

10. The Defendants are enjoined from publicly displaying the Infringing Works contained on any online sites.

11. The Defendants are enjoined from publicly displaying CITO's name in connection with the Infringing Works.

(B) For judgment that Defendants have violated the Copyright Act and that all such violations have been willful;

(C) A permanent injunction requiring the Defendants and the Defendants' agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each and any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of the Plaintiff's rights protected by the Copyright Act;

(D) A permanent injunction prohibiting and restraining third-party service providers from publicly displaying the Registered Infringing Works.

(E) A permanent injunction prohibiting and restraining the Defendants from publicly displaying CITO's name in connection with the Infringing Works.

(F) An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Defendants, including all profits and damages directly and indirectly arising from exploitation of the Registered Infringing Works, domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

1. Record sales;
2. Downloads
3. Ringtones;
4. Ringback tones;

5.  Public performance revenues;
6.  Digital revenue;
7.  Streaming revenue;
8.  Synchronization licensing;
9.  Merchandising;
10. Public appearances;
11. Endorsements;
12. Sponsorships;
13. Spokesperson work;
14. Touring revenue;
15. Advertising revenue;
16. Appearance fees;
17. Name and likeness income and increase in value;
18. Rights of publicity income and increase in value;
19. Increased value in all Defendants' publishing and/or record company and/or companies;
20. Increased value of all Defendants' catalogues;
21. Increased value of music publishing and/or record royalties and rights;
22. Increased value of social media rights, accounts and value;
23. Increased goodwill;
24. Promotional value;
25. Increased value of royalty rate for record deals;
26. Increased value in distribution deals, negotiating power and reduction in costs;
27. Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;
28. Value of obtaining better terms for record company advances and terms and multi-record deals;
29. Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendant SUIGENERIS;
30. Increased value in negotiating 360 deals with record companies and/or publishers;
31. Sheet music sales and sheet folio income;
32. Any and all music publisher income;
33. Any and all record master income;
34. Any and all record income;
35. Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;
36. Any and all producer royalty income;
37. Any and all arrangement income;
38. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

39. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

40. Any and all income from any society to which any Defendant belongs or joins in the future;

41. Any and all income and/or residuals from SAG-AFTRA;

42. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services;

43. Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the Infringing Works in the service; and

44. Full payment of all royalties owed.

(G) In the alternative, an award of statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

(H) An award of compensatory and special damages, to be determined at trial;

(I) An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

(J) An award of damages for unfair competition and misappropriation in an amount to be determined at trial but no less than $500,000.00;

(K) An award of damages for misrepresentation pursuant to 17 U.S.C. § 512(f), including costs and attorneys' fees in an amount to be determined at trial but no less than $350,000.00;

(L) An award of damages for trademark infringement by dilution pursuant to 15 U.S.C. § 1125(c) in an amount to be determined at trial but no less than $500,000.00;

(M) An award of damages for violation of the right of publicity under N.Y. Civ. Law § 50 in an amount to be determined at trial but no less than $750,000.00;

(N) An award of damages for defamation including compensatory and punitive damages in an amount to be determined at trial but believed to be not less than $1,000,000.00;

(O) An award of damages for unjust enrichment in an amount to be determined at trial but no less than $500,000.00;

(P) For pre-judgment and post-judgment interest according to law, as applicable; and,

(Q) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
      April 12, 2024

Respectfully submitted,

**JUSTIN JACOBSON LAW, P.C.**

By:

Justin M. Jacobson, Esq. (JJ 2022)
7 Penn Plaza, Suite #420
New York, NY 10001
Telephone: (516) 220-2911
Fax: (917) 970-2028
Email: justin@jmjesq.com

*Attorney for Plaintiff*
*In The Struggle Productions*
*Limited Liability Company*